who was found to have suffered past persecution but was denied the presumption of future persecution for two reasons. One, the agency found that the proposed particular social group was circular, that is, it was defined by the harm that it would suffer, and secondly, that there therefore was no nexus to a protected ground. If I may begin with the cognizable particular social group, the agency... Let me ask you, counsel, if you prevail now on appeal on the first issue, then it would be remanded automatically, right? Well, it would have to be remanded at the very least. I think the court could very well look at the case... But if it gets remanded on that ground, then we don't necessarily have to remand on the nexus ground because it still gets remanded. Either one. So either ground will do it for your clients. Yes, it would suffice. The agency determined and the government argues that the mere inclusion of the words in the explication of the particular social group, the mere inclusion of the words who were persecuted renders a particular social group that has been recognized as cognizable landowning farmers for decades, if not generations, is now, because of the magical power of those three words, it's now invalid and can't function as a particular social group. Counsel, may I ask you a question? So is your argument then that the particular social group is landowning farmers? Yes. And that the additional words were just noting that landowning farmers had in fact been persecuted? Exactly, Your Honor. It's surplusage, just to point out that they were persecuted. I just realized, I forgot to ask for three minutes rebuttal. Can I do that at this time? Two minutes. I'm penalized. Thank you. That's okay. This, I don't know if I said this yet, that interpretation is, with all respect to the government and the agency, ludicrous. And let me give you an example. The Kasinga case, women who were subject to female genital mutilation, recognized social group. If the formulation of the social group included the words, who were persecuted, according to the government and the agency, that would no longer be a cognizable social group. Same with this court in Aldana Ramos and Deborah Michael. If the social group was membership in a nuclear family, but we included the words, but were persecuted, that would no longer be pursuant to this argument, a particular social group. I can give you an example of a real social group that's circular. Guatemalans who are persecuted. That's a circular social group, because Guatemalans, it doesn't stand alone apart from the harm that is caused. And by the way, this argument is, represents, in my view, sophistry at its worst. Word games being played. And it's at its worst because these cases involve matters of life and death for these asylum applicants. As to that, counsel, I'd like to ask you a question, and if I remember, I'll ask the government the same question. So on your argument that it is surplusage, or at worst, surplusage, I think there's another way to read the record in that there's just a misunderstanding and that the claim was always just farmers who own land. And I say that because at the BIA, that was precisely the argument that was made in the briefing to the BIA by your client. So it could be that it was surplusage. It could be that there's a misunderstanding, this disconnect between what was attempted to be argued and what the agency thought was being argued. Either way, if we were inclined, as Judge Helpe mentioned, on this issue to remand using the proper framing, as you would say is the proper framing, in these cases, as you know, there isn't typically an opportunity for mediation through our mediation program, but we have sometimes given that opportunity to the parties. Do you know whether you would prefer a shot at that before we issued an opinion? Do you have a position on that? Off the top of my head, I wouldn't be opposed to that. Circularity means that the particular special group is only defined by the harm it will suffer. Solely defined, only defined, exclusively defined by the harm it will suffer. In this case, so the question becomes, are landowning farmers a particular social group? Well, the seminal case which defined these terms, matter of Acosta, many years ago, gave two specific examples of what would constitute a particular social group. People who have had military leadership positions and land ownership. It's clearly a cognizable social group. And the fact that it wasn't, that this surplusage or whatever you want to call it was added, doesn't change that fact. And counsel, assuming we agree with you that it's legally cognizable, again, on a remand, the immigration judge would still need to look at whether it's a cognizable social group in Guatemalan society, right? You'd have to go through the rest of the factors. Do you think the record already supports the recognition of the social group in Guatemala? Could you talk about just what the record shows as of now? Without a doubt. I believe it does. The agency didn't utter a matter of MEVG says that you have to, in analyzing the particular social group, is it socially distinct, is it defined with particularity, are there immutable characteristics involved? Not one syllable was uttered by the agency as to an analysis of whether this is a good social group. Because as soon as they saw we'll be persecuted, they hung their hat on that in the nexus. If I can speak to the nexus issue. Persecution must be on account of one of the protected grounds. Now, if we properly recognize the cognizable social group, it's not very difficult to understand the nexus between the harm and the social group. You should bear in mind that what's at issue here is the scheme that the gangs employed here. They target landowning farmers, excuse me, they do, they threaten, they perform violence, they steal their cattle. In an attempt to devalue the value of the farm, they're working in concert with what they call secret investors, and the gangs destroy the farms to the point where the farm owners are forced to sell their land. Farm owners are forced to either abandon them or sell them. So the gangs hook these secret investors up with the people who now have the distressed farms, and they buy them for ten cents on the dollar perhaps, and then the gangs get their kickback. So what's at issue here is harm targeted precisely at farm owners, landowning farm owners, because they are landowning farm owners. Counsel, in your brief, another reason why you are asking us to remand is because of the vacated decisions that the IJ and the BA agreed, relied on, the vacated decisions in matter of AB? Yes. So what is your position on what the current correct legal standard is about criminal activity and whether it would be sufficient? Yes, I brought up matter of AB2 and matter of LEA, because they stand for the proposition that it is nearly impossible to find asylum based on private conduct. Those decisions are gone. They have been vacated, very bad law, and the law reverts back to matter of ARCG, in which you certainly can if you satisfy the other criteria. It can be based on private conduct. And what are those, in your view, what are the correct criteria that should be applied now? Just what we have been speaking about, is the social group cognizable? Can you establish the nexus?  In those cases that have been vacated were just way out of left field, and they have been properly gone now. If I could just speak to, I hope I answered your question. If I could speak to the two things that. Counsel, just to let you know, you have about two minutes, because then you reserve for rebuttal. I don't think the clock was changed. Oh, okay. It was changed? Okay, so then you have this time. The government and the agency took two stabs at trying to say there was no nexus. The first one was this is just general criminal activity, it's not targeted. I doubt that you will find very many gang members breaking into bodegas to steal cattle. This is not general robbery, it's not generalized criminal activity. It's targeted at these landowners to get their land. That's the first attempt they made. The second one was that one of the motivations was this was revenge. The gangs were looking for revenge. Well, that may be true. Revenge may have been one of their motivations, but that completely ignores the abundant case law dealing with mixed motives. Congress was wise enough to know when they created this structure that persecutors very often have more than one motivation. So they made the case dependent upon whether or not you could show that despite what other motivation there may have been, that this motivation is one central reason for the persecution. I think it has to be as plain as the nose on someone's face, that when you're going after, you're targeting plant-owning farmers to get their land, that that satisfies the one central reason, requirement. And in that vein, all that you have to do to establish that is to show that there is one central reason. There is some evidence, some evidence that the persecutors acted for that protected reason. And we don't ignore evidence of real nexus just because there may be evidence of another motivation. Mixed motive. Counsel, isn't it true that the immigration judge actually ruled in your client's favor on that point? I mean, the immigration judge said that the gangs were working with the police to lower the price of the land. Correct? Yes. In this particular case, the police were involved as well. Okay. But what my colleague is saying is the immigration judge made a fairly good finding in your client's favor as to the involvement of the police. And if you look at the record, I believe when the perpetrator was arrested, was released, and then your client was warned. So there is evidence of that below. It's nice to have them do some part of the case correctly. I don't see where it affects the basic issues that are involved. Well, it raises a question in my mind, counsel. I took the IJ to the agency to be saying that there was an attempt to get the land from the landowner, and that the problem was simply the perceived circularity problem that the agency saw. If we eliminate the circularity problem, it seems to me the agency has actually made the nexus part of the case for you. I agree. Okay. I agree. Well, all we have to do is correct the social group, the circularity problem, and it's obvious, I think. Let me ask you, based, again, because I think from Judge Howard's question now, we have some very favorable, and based on my question, and I think Judge Rickleman also, we have some very favorable findings below, but then the judge, the conclusion is perhaps, what you're saying, inconsistent with those findings. My question to you is, if we were to remand, can we on those findings, should we remand for further proceedings, or do we remand with a directive that the IJ make, the agency make, you know, is it now really a matter of law what you're asking that be employed? I think we should reverse. No, definitely, but if it gets reversed, are you asking for reversal, further proceedings, and end of the story. I think you can reverse based on the record, Your Honor, but certainly it must be remanded, if not reversed. Okay. That's a question I'm going to ask opposing counsel. Mr. Tennyson. Good morning. Let me start right off by addressing your question about mediation. Petitioner hadn't asked for prosecutorial discretion before ICE, but we'd certainly be open to mediating the case. That's not an issue. Second, as to what happens if the petitioner wins on a particular social group or the nexus, he has to show that the agency was wrong about both. That not only did the agency err in finding a particular social group circular, but also in finding that there was no nexus to the particular social group as well. Counsel, do you think that legal error, assuming there is a legal error on the particular social group, do you think it just infected the nexus analysis, or do you think the nexus analysis can still stand? There needs to be further analysis on the other aspects of the social group question, whether or not there's social distinction, whether or not landowning farmers in Guatemala do, in fact, form a social group. Because of that, whether or not it is particular, that is, whether or not landowning farmers is a social group with defined borders. So all of those things still need to be hashed out. The immigration judge solely focused on the circularity issue. Those other issues, which are questions of fact, need to be resolved. So it would need to be a remand, not a just out-and-out reversal. Now, turning to... particular social group and the particularity question, I mean, not particularity, the circularity issue, the petitioner is the master of his claim. He could have come in and said, when the immigration judge said, what is your social group, right, and his response was landowning farmers who have been persecuted simply because they are farmers who own land by the police and gangs acting in concert. I think that was what he said. The immigration judge responded and said, so your social group is, and gave him the full response. He could have said, oh, and also just landowning farmers. But he didn't. I don't read the record quite that way. The IJ, in its decision, and the BIA repeated this, they put a comma after the word farmers. That comma doesn't exist in the transcript of the oral hearing. But they put one in. And I began to wonder why they put that in. And perhaps it's because, at least from the IJ's perspective who heard the testimony, it was something more along the lines of Mr. Espinoza Ocho is a landowning farmer who was persecuted simply for... So it could have been surplusage or just stating a fact about the persecution. And then the IJ didn't say, so your social group is. The IJ said, let me read that back to you. So that's why I say maybe there's just a misunderstanding here. But when we get to the BIA, the brief expressly says landowning farmer, period. So that's a curious thing, because in the brief, when he gives his argument, it's this political opinion, landowners and farmers. It's this paragraph that has a lot of things thrown out. And the board reads this. And it could be misapprehension on the board's part. But the board reads this as this petitioner is shifting his protected ground to an imputed political opinion. That he is opposing the activities of the gangs and whoever is behind the gangs. And that the petitioner has just raised this for the first time on appeal. We're not considering that. And instead, all we've got is the social group that he advanced below. So, counsel, just turning back to the social group he advanced in front of the IJ, even if we were to agree with you that we should sort of interpret the social group in a very formalistic way, which I think what your argument is, literally looking at the words rather than the substance of what the petitioner is saying, even if that were true, doesn't the legal test actually requires to say or to evaluate whether regardless of how it's phrased, there's still a narrowing characteristic that identifies the group? And so wouldn't the phrasing here, even if it were exactly as you said, still qualify under that legal test? Because there is a narrowing characteristic, landowning farmers. It's not defined solely by persecution. Right. So I think the question you're asking is, shouldn't this be an obligation on the immigration judge in the future? No, I'm just asking you, don't you agree that that's the correct legal test? That's not how I've read this, for example. So what would you say that the correct legal test is? I would take, for example, Perez Ravanalos, right, which had as a social group, Guatemalan women who tried to escape from persecution. And what happened is that social group wasn't cleaved out. There was no obligation to, there was no obligation under this court's prior precedent for the immigration judge to narrow and say, wait, this back half of attempting to escape harm is inherently problematic, is inherently circular. It is, you're defining that aspect of your group on preexisting persecution. That therefore we just look at Guatemalan women as a social group and we determine whether or not that's a particular social group. And I'm not saying that that's not, that wouldn't be a legitimate way for the board to have the immigration courts address these things. It might make things so much easier if they did, but they don't. And the board doesn't require it and this court's law in previous decision hasn't required it. So you, I just want to be very clear on this. So you disagree that the legal test is that as long as the definition of the particular social group still provides a basis for a narrowing characteristic that is shared other than being persecuted, you say that's not the current legal test? That's not going to, that isn't going to get you there. I mean, certainly that could be the case, but in this case, given preexisting law, there was no reason for the immigration judge to have thought that he needed to narrow. So if we were to reverse and clarify or rule otherwise, then the immigration judge would apply the standard? If you were to reverse, yes, the immigration judge would be reversed. If we said our law wasn't clear, the immigration judge did not use the standard, and we hold that this is the standard and we want to clarify, and I believe there are several circuits that have specific, adopted that standard. So if we were to adopt those circuit standards, then this should all be, I assume you would agree, this would all be remanded for further proceedings? Right. That would definitely be the case. Let me ask you, are you aware of other circuits have gone the other way or they're all in consensus? So you're asking me to think off the top of my head. I believe the Fifth Circuit has gone the other way. I believe, I'm not sure the Second Circuit has. But the majority, this is the majority. So I'm not sure what the majority is. I know the Ninth Circuit has gone the way in which we're discussing now. But there are very good reasons why you should not do that, and that is there are various, I guess, one, the petitioner is in charge of their claim. They have the opportunity not only to provide one social group, but to provide as many as they want as a basis for their claim. They can define the group however they want. Second, starting to undercut or require immigration judges to always pare down social groups when there are definitional issues. Say, for example, the particularity question, right? Not just circularity, but say someone has a social group that is overbroad or nebulous based upon how it's defined. That's a definitional question. Should the immigration judge get in the business of redefining people's social groups in order to resolve that? I don't think so. The petitioner may very well have good reasons for defining it nebulously. The immigration judge may get it wrong in that kind of circumstance. And third, there are ways in which the immigration judge can find out what the social group is. The immigration judge can further ask, particularly in pro se cases, but additionally has an obligation to nail down what that social group is or what those social groups are. So essentially, you've got all of these protections, all of these requirements that are premised on the idea that the petitioner is the master of their claim, that they can set out particularly what their social groups are in a formalistic fashion, as you've said. And to say, no, no, actually they need to be handheld in these things. Or if there's a problem with it, the immigration judge is required to fix the social group. Ends up putting, one, certain petitioners on the back foot, because that may not be the social group once the immigration judge goes and fixes the group. But also ignores the fact that immigration courts do have some affirmative obligation to make sure that what the petitioner has put forward is what they put forward. So cutting this down isn't what should be happening here. Is there anything in this record that would suggest that what he meant by his social group that was later persecuted were landowning farmers who had been persecuted? So if you look at, it's interesting, if you look at his claim, right? His claim is, I had my cattle. My cattle were stolen. I went, the police didn't help me when I found my cattle, I guess it was 11 days later. And then once the police did take the individual into custody, they released them after a certain number of days, and then I started receiving death threats. So we've broken things down. It's quite possible that if he's arguing the persecution to be, and it's not clear. If the persecution is the death threats I've received, and that's what the immigration judge took to be the persecution, right? The death threats and those constituted persecution. If that's the case, that is by itself the persecution which he uses to define the group, right? I mean, it's plausible to read that to be the persecution is the theft of the cattle. So if that were the case, I understand we're getting a little far afield, but if that were the case, what would be wrong with that social group as a basis? Right. That's not circular. That is not circular because you've got the former and the latter. But that's, again, the understanding and construction of the social group. Our review of it is, or the court's review of it is on substantial evidence. The immigration judge does have the ability to construe the social group. But if it's not circular, then you're conceding there's a problem in the agency decision. Right, but the thing is, I would say that the theft of the cattle doesn't constitute persecution. That that's theft. It doesn't rise to the level of persecution. So if that's not persecution and he's defining his group by his being persecuted, then inherently it is circular. The petitioner's original argument in his brief is, landowning farmers who have been persecuted, et cetera, et cetera, et cetera, obviously there's a nexus here because it's inherent to this group that I've offered. But that's obvious because it's a logical consequence, not because it's causal. It's not causally motivated. And even if we were to cleave off the bad language, substantial evidence supports the nexus finding here. The immigration judge found that the petitioner was a victim of a criminal scheme. I mean, that this is just base criminality. And this court has previously held a nexus as far as what is required for one central reason, is that the reason not be incidental or subsidiary to an underlying purpose. Counsel, wasn't the finding made under vacated guidance? Okay. So getting back to AB, you're right. AB is no longer the law. But I think that the decision here and the references to AB in this case are anodyne. They basically respond to what is preexisting law. Things that have existed. But it's cited. It's cited as a reason. And that has been vacated and AB said that pretty much criminal activity is never enough. And now that's not the standard. And you're saying that's anodyne? That's not the standard. But I don't think the board's position here is that criminal activity broadly is not enough. But shouldn't that be clarified and shouldn't it go back so, you know, the BIA issue the same opinion but not relying on those cases. Because just imagine if we were to issue in any case an opinion inciting bad law or no longer what's law, what's the confidence in that? It's like maybe we relied on the wrong law. The confidence I have here has to do with the other factual findings of the immigration judge. Certainly the immigration judge commented on AB and relied on it and made a comment about criminality. But this court has previously said that bare criminality alone does not constitute, will not give rise to an asylum claim, doesn't give rise to nexus. But the immigration judge didn't find bare criminality. He specifically said that the gangs were working with the police to steal his land and made death threats so that they could follow up on their scheme. So I guess my question to you is what does the government say is sort of the correct standard that should apply now to assess whether criminal activity can support an asylum claim? Right. It should be the standard that this court has held, has applied consistently. And that is that it needs to be one central reason that, you know, that the cause of the harm can't be incidental to or, what is it, subordinate to some underlying reason. And here the immigration court, and I'll wrap up very quickly. The immigration court said that the underlying reason, even if there was a scheme to get money, you have to understand that the petitioner brought in death certificates from a number of people. Five of them were farmers, but you have a motorcycle guard, a pharmaceutical technician, a housewife, who are being targeted, as the petitioner himself has said, because the housewife has a spouse who's in the United States who's sending remittances. What the gangs are after is just money. And there are all these schemes, picking out people to get money. But that's incidental, subservient to the goal of getting money. Are you specifically relying on incidental independently, or is subsidiary an important part of your argument? Subsidiary is also important. Okay, so as to that, I am not sure about this, but I don't think we actually have a case that holds specifically on the facts of that case that it was subsidiary. We have repeated, I've done it myself many times over, we've used the word subsidiary. But of course, as you know, there's the Third Circuit opinion that says that shouldn't be in there. But you're relying on that now, so we may have to deal with that. I'm relying on it because you don't have to deal with it. And you also have the other justification, although that could be a mixed motive, with regard to the specific targeting of the individual after he outs the scheme, that this looks like revenge. So that would be more incidental, then, would be your point. If the Court has no further questions, the Government rests. Thank you, Counsel. Mr. Olin, you have two minutes. I don't mean to beat a dead horse, but with respect to this continuing discussion about how to frame the particular social group, we are still at the point where when the words who are protected are there, then the cognizable social group becomes invalid. If that's the case, then we need to teach every attorney who represents asylum seekers to say, don't you dare say who were persecuted. How about pro se defendants who don't speak English, or applicants who don't speak English? What do they do? How do they define the social group with such precision? Sometimes it seems to me that by including the language, it is intentional, with an attempt to narrow a broad group that might not be sufficiently particular or cohesive. And so are you suggesting there should be a presumption one way or the other, or do you want a flat rule that you just take off that language? You think it's always surpluses. I think they have to be looked at on a case-by-case basis, Your Honor. With respect to what my brother said about Nexus, this isn't generalized crime. I'm not so sure what constitutes maybe robbery, maybe burglary, but specifically targeting landowners to get their land is not generalized crime. That's all I have, Your Honor. If you have any other questions.